**Nos. 08-6468, 08-6538**

_____

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

**MARCUS CAREY,**

*Plaintiff – Appellant*

**v.**

**STEPHEN D. WOLNITZEK, JAMES L. BOWLING, JR., R. D. DYCHE, III, STEPHEN N. FRAZIER, JOYCE KING JENNINGS, MICHELLE M. KELLER, DIANE E. LOGSDON, WILLIAM P. RYAN, JR., and LEE E. SITLINGER, JR., as members of the Kentucky Judicial Conduct Commission; STEPHEN L. BARKER, MARGARET E. KEANE, and REED N. MOORE, JR., as Panel Chairpersons of the Kentucky Inquiry Commission; LINDA A. GOSNELL, as Bar Counsel to the Kentucky State Bar,**

*Defendants – Cross-Appellants*

_____

**Appeal of Final Judgment from the**
**United States District Court for the Eastern District of Kentucky**
*The Honorable Karen K. Caldwell, Judge*
**Civil Action No. 3:06-cv-00036**

_____

## OPENING BRIEF OF PLAINTIFF-APPELLANT

_____

**James Bopp, Jr.**
**Anita Y. Woudenberg**
**Josiah Neeley**
**BOPP, COLESON & BOSTROM**
**1 South 6th Street**
**Terre Haute, IN 47807-3510**
**812-232-2434**
*Counsel for Plaintiff-Appellant*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____        Case Name: _____

Name of counsel: _____

Pursuant to 6th Cir. R. 26.1, _____
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

---

### CERTIFICATE OF SERVICE

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_____

_____

_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# Table of Contents

Table of Authorities ................................................................................. ii

Jurisdictional Statement ........................................................................1

Statement of the Issues...........................................................................1

Statement of the Case.............................................................................1

Statement of Facts .................................................................................3

Summary of the Argument.....................................................................4

Argument.................................................................................................6

      Standard of Review.........................................................................6

I.     The District Court Erred In Finding the Commits Clause Facially
Constitutional.........................................................................................6

     A.     The Commits Clause Is Not Narrowly Tailored to Further a
Compelling State Interest. .................................................11

     B.     The Commits Clause Is Unconstitutionally Overbroad. ....................18

     C.     The Commits Clause Is Unconstitutionally Vague. ...........................22

Conclusion .............................................................................................24

Request for Oral Argument...................................................................25

Certificate of Service ............................................................................26

Certificate of Compliance .....................................................................27

Addendum: Designation of District Court Documents

# Table of Authorities

## *Cases*

*Anderson v. Spear*, 356 F.3d 651 (6th Cir. 2004)....................................................18

*Bridges v. California*, 314 U.S. 252 (1941)............................................................16

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973)........................................................18

*Buckley v. Illinois*, 997 F.2d 224 (7th Cir. 1993) ........................................... *passim*

*Buckley v. Valeo,* 424 U.S. 1 (1976) .......................................................18-19, 22-23

*Carey v. Brown*, 447 U.S. 455 (1980)....................................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................................6

*Duwe v. Alexander*, 490 F. Supp. 2d 968 (W.D. Wis. 2007)...............................7, 15

*Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989)........11

*Family Trust Foundation of Kentucky v. Kentucky Judicial Conduct
   Comm'n*, 345 F. Supp. 2d 672 (D. Ky. 2004)................ 7, 10-1, 15, 17, 20, 22

*Family Trust Foundation of Kentucky v. Kentucky Judicial Conduct
   Comm'n*, 388 F. 3d 224 (6th Cir. 2004).........................................................7

*FEC v. Wisconsin Right to Life,* 127 S.Ct. 2652 (2007).........................................23

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................................22

*Grider v. Abramson*, 180 F.3d 839 (6th Cir. 1999) .................................................18

*Harper v. Office of Disciplinary Counsel, Supreme Court  Harper v.
   Office of Disciplinary Counsel, Supreme Court of Ohio*, 113 F.3d
   1234 (Table), 1997 WL 225899 (6th Cir. 1997) .............................................9

*Indiana Right to Life v. Shepard,* 463 F. Supp. 2d 879
  (N.D. Ind. 2006) .......................................................................8, 17, 20, 22, 24

*Johnson v. Mississippi*, 403 U.S. 212 (1971) ..........................................................12

*Kansas Judicial Watch v. Stout,* 440 F. Supp. 2d 1209 (D. Kan. 2006)........8, 20, 22

*Laird v. Tatum*, 409 U.S. 824 (1972)......................................................................13

*Leonardson v. East Lansing,* 896 F.2d 190 (6th Cir. 1990) ...................................18

*Liteky v. United States*, 510 U.S. 540 (1994)..........................................................17

*North Dakota Family Alliance v. Bader*, 361 F. Supp. 2d 1021
  (D.N.D. 2004) .............................................................................8, 17, 20, 22

*Pennsylvania Family Institute v. Celluci*, No. 07-1707, WL 3010523
  (E.D. Pa. Oct. 16, 2007).............................................................................. 8-9

*Republican Party of Minnesota v. White,* 536 U.S. 765 (2002) ..................... *passim*

*Republican Party of Minnesota v. Kelly*, 247 F. 3d 854 (8th Cir. 2001)................11

*Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990)....................................11

*Simon & Schuster v. New York State Crime Victims Board*, 502 U.S. 105
  (1991) ............................................................................................................11

*Stretton v. Disciplinary Board of the Supreme Court of Pennsylvania,*
  944 F.2d 137 (3d Cir. 1991)...................................................................9 n.1

*Thomas v. Collins,* 323 U.S. 516 (1945)..................................................................23

*United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*,
  413 U.S. 548 (1973) .......................................................................................9

*United States v. Salisbury*, 983 F.2d 1369 (6th Cir. 1993)....................................22

*Watkins v. City of Battle Creek*, 272 F.3d 682 (6th Cir. 2001)................................6

*Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002) ..................................................19

**Constitutions, Statutes, and Rules**

U.S. Const., amend I ......................................................... *passim*

U.S. Const., amend. XIV ......................................................... *passim*

28 U.S.C. § 1291 ..................................................................1

28 U.S.C. § 1331 ..................................................................1

Fed. R. Civ. P. 56(c) ............................................................6

Ky. S. Ct. R. 4.300, *Terminology*...........................................21

Ky. S. Ct. R. 4.300, Canon 5B(1)(c) .......................................... *passim*

**Other Authorities**

Alan B. Morrison, *The Judge Has Robes: Keeping the Electorate in the Dark About What Judges Think About the Issues*, 36 Ind. L. Rev. 719 (2003)..................................................................16 n.4

James Bopp, Jr., *Preserving Judicial Independence: Judicial Elections as the Antidote to Judicial Activism,* 6 First Amendment L. Rev. 180 (2007)........................................................................16

James Bopp, Jr. and Anita Y. Woudenberg, *An Announce Clause By Any Other Name: The Unconstitutionality of Disciplining Judges Who Fail to Disqualify Themselves For Exercising Their Freedom to Speak,* 55 Drake. L. Rev. 723 (2007)..................................................14 n.2

James Bopp, Jr. and Anita Y. Woudenberg, *To Speak or Not to Speak: Unconstitutional Regulation In the Wake of White*, 28 Just. Sys. J. 329 (2007)......................................................................................21

James L. Gibson*, Challenges to the Impartiality of State Supreme Courts: Do "New-Style" Judicial Campaigns Undermine Judicial Legitimacy* 102 Am. Political Sci. Rev. 59 (2008), *available at* <http://polisci.wustl.edu/sub_page.php?s=3&m=0&d=7>....................15 n.3

Lloyd B. Snyder, *The Constitutionality and Consequences of Restrictions on Campaign Speech by Candidates for Judicial Office*, 35 UCLA L. Rev. 207 (1987). ...........................................................................16

# Jurisdictional Statement

The district court's subject matter jurisdiction in this case rests on 28 U.S.C. § 1331, because this is a civil action in which it is alleged that the challenged Kentucky Canons of Judicial Conduct violate the U.S. Constitution.  This Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's final judgment granting and denying motions for summary judgment entered October 27, 2008, disposing of all claims in this case.  (R. 102, Judgment.) Plaintiff Marcus Carey now timely appeals that judgment; he filed his Notice of Appeal on November 26, 2008. (R. 106, Notice of Appeal.)

# Statement of the Issue

I.      Whether the District Court Erred in Holding the Commits Clause Constitutionally Prohibits Protected Speech.

# Statement of the Case

On June 9, 2006, Plaintiff Marcus Carey filed his Complaint in the United States District Court for the Eastern District of Kentucky. (R. 1.) In it, he alleged that his constitutional rights to free speech and association were violated by Canons 5B(1)(c), 3E(1), 5B(2), and 5A(2). (*Id.*) Concurrently, he sought a preliminary injunction of these canons. (R. 2.) Defendants, the Judicial Conduct Commission and the Kentucky State Bar ("the Commission"), filed motions to dismiss on July 12, 2006. (R. 21, 22.) A hearing for both motions was held on

1

September 28, 2006, and an order issued on October 10, 2006 (R. 35, Preliminary

Injunction Opinion.) The Court dismissed Carey's claims as to Canon 5B(1)(c)

("the commits clause"), Canon 5A(1)(b) ("the endorsement clause"), and Canon

3E(1) ("the recusal clause"), but granted Carey's preliminary injunction request as

to Canon 5A(2) ("the partisan activities clause") and Canon 5B(2) ("the solicitation

clause"). (*Id.*)  On November 2, 2006, Carey moved to amend his complaint in

light of the Court's non-prejudicial dismissal of his commits clause claim, which

was granted on November 28, 2006. (R. 49, 51.) On December 22, 2006, the

Commission moved for dismissal of the amended complaint (R. 53, 55), which was

granted as to the endorsement clause and the recusal clause, but denied as to the

facial challenge of the commits clause, as well as the solicitation clause and the

partisan activities clause on September 17, 2007. (R. 75.)  On October 26, 2007,

Carey filed a motion for summary judgment. (R. 81.) On April 3, 2008, the

Commission filed a motion for summary judgment. (R. 93.) On September 30,

2008, the Court granted Carey's Motion for summary judgment as to the

solicitation clause and the endorsement clause, but granted the commission's

motion for summary judgment as to the commits clause. (R. 100, 101.) A judgment

was entered October 27, 2008 (R. 102.) Carey timely filed his appeal on November

2

26, 2008. (R. 106.)  The Commission filed its cross-appeal on December 10, 2008.

(R. 107.)

## Statement of the Facts

Plaintiff Marcus Carey is a resident of Owen County, Kentucky, and 2006

candidate for election to the Supreme Court of Kentucky from the Sixth Appellate

District of the Commonwealth of Kentucky. (R. 51, Amended Complaint, at ¶ 19.)

As a candidate, Carey was bound by the Kentucky Code of Judicial Conduct,

which regulates Kentucky state judicial elections. During the 2006 election, Carey

wished to engage in certain campaign related activities prohibited by this Code.

(*Id.* at ¶¶ 19, 20.)

Carey wished to announce his views on disputed legal and political issues by

answering questions inquiring about his views on those issues posed during the

campaign. (*Id.* at ¶ 19, Ex. A.) He was prevented from doing so, however, by

Kentucky Canon of Judicial Conduct 5B(1) (the "commits clause"), which

provides that

> [a] judge or candidate for election to judicial office shall not
> intentionally or recklessly make a statement that a reasonable person
> would perceive as committing the judge or candidate to rule a certain
> way on a case, controversy, or issue that is likely to come before the
> court . . .

3

(*Id.* at ¶ 2.) Because of Canon 5B(1)(c), Carey did not announce his views on disputed legal and political issues during his campaign. (*Id.* at ¶ 22.)

If the District Court's decision to uphold the commits clause is upheld, judicial candidates will continue to be chilled from stating their views on disputed political and legal issues in any future campaigns. (*Id.* at ¶ 32.) Carey has been deprived of his constitutional rights under the First and Fourteenth Amendments to the United State Constitution. He has no adequate remedy at law. (*Id.* at ¶ 33.)

## Summary of the Argument

In *Republican Party of Minnesota v. White,* the United States Supreme Court held that judicial candidates have a First Amendment free speech right to state their views on disputed issues during their campaigns.  Since then, federal courts have struck down pledges and promises clauses, and commits clauses that include within their scope such statements.  Kentucky's commits clause is no exception.    By prohibiting judicial candidates from "intentionally or recklessly make a statement that a reasonable person would perceive as committing the judge or candidate to rule a certain way on a case, controversy, or issue that is likely to come before the court," the commits clause is unconstitutional.  Although the District Court sought to narrowly construe the commits clause to cure it of its constitutional infirmities by interpreting it to only prohibit pledges and promises to rule a certain way,

4

because the Court was not at liberty to so construe it, it remains unconstitutional. First, it fails strict scrutiny. Any valid state impartiality interest, namely, that of preventing bias for or against a party, is not addressed through the commits clause. Instead, the commits clause is underinclusive in that it only addresses commitments and the appearance thereof made during a campaign without regard for prior, equally relevant commitments. And it is overinclusive in that it prohibits commitments that would not affect judicial candidates' impartiality as judge. And any impartiality concerns the Commonwealth may have are more adequately addressed through the election process itself.

Second, the commits clause is overbroad. To determine whether a violation has occurred, a judicial candidate's speech is subject to the perceptions of a reasonable person. This inevitably and unconstitutionally forces a candidate to hedge and trim even announced views. This failing is not curbed through restricting the scope of the clause to those matters "likely to come before the court," as very little is likely to escape the scope of such a purported exception.

Finally, the commits clause is vague. Because their speech is subject to the perceptions of an unknown, albeit reasonable, person, judicial candidates have no clear way of knowing when announced speech "appears to commit" them or not.

Nor do they know with any certainty what is likely to come before them as judge. The result is unconstitutionally chilled speech.

In reviewing the District Court's decision de novo, this Court should reverse that decision and find that the commits clause facially fails strict scrutiny and is unconstitutionally vague and overbroad.

# Argument

## Standard of Review

This is an appeal from a partial denial of Carey's motion for summary judgment, and this Court reviews the grant or denial of a motion for summary judgment de novo. *Watkins v. City of Battle Creek*, 272 F.3d 682, 685 (6th Cir. 2001). Summary judgment is granted when the record, viewed in light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## I. The District Court Erred In Finding The Commits Clause Constitutional.

The District Court held that the commits clause was not unconstitutional. Kentucky's commits clause, embodied in Canon 5(B)(1), states that:

> A judge or candidate for election to judicial office shall not intentionally or recklessly make a statement that a reasonable person would perceive as committing the judge or candidate to rule a certain way on a case, controversy, or issue that is likely to come before the

court; and shall not misrepresent any candidate's identity, qualifications, present position, or other facts.

Ky. S. Ct. R. 4.300, Canon 5B(1)(c).  The commentary to the clause states that the clause "prohibits a candidate for judicial office from making statements that appear to commit the candidate regarding cases, controversies or issues likely to come before the court." *Id.*

This version of the commits clause, as the District Court notes, was adopted when the prior version of the commits clause was enjoined. (R. 101, Opinion and Order, at 9.) In *Family Trust Foundation of Kentucky v. Kentucky Judicial Conduct Comm'n*, 345 F. Supp. 2d 672 (D. Ky. 2004), the Eastern District of Kentucky issued an injunction against a previous version of the commits clause, finding that plaintiffs were likely to succeed in their claim that the clause violated the First Amendment under *Republican Party of Minnesota v. White,* 536 U.S. 765 (2002). *Id.* at 711. The Sixth Circuit declined to stay this injunction, finding that the Kentucky was not likely to succeed on the merits of the claim. *Family Trust Foundation of Kentucky v. Kentucky Judicial Conduct Comm'n*, 388 F. 3d 224, 227 (6th Cir. 2004).

Other federal courts likewise have held that "pledges and promises" and "commits" clauses are unconstitutional under *White. See Duwe v. Alexander*, 490 F. Supp. 2d 968 (W.D. Wis. 2007) (striking down Wisconsin's "pledges and

7

promises" and "commits" clauses as applied to voter questionnaire); *Indiana Right to Life v. Shepard,* 463 F. Supp. 2d 879, 890 (N.D. Ind. 2006) (*reversed on appeal on other grounds*) (striking down Indiana's "pledges and promises" and "commits" clauses); *Kansas Judicial Watch v. Stout,* 440 F. Supp. 2d 1209, 1241 (D. Kan. 2006) (granting a preliminary injunction against Kansas' "pledges and promises" and "commit" clauses); *North Dakota Family Alliance v. Bader*, 361 F. Supp. 2d 1021, 1042 (D.N.D. 2004) (striking down North Dakota's "pledges and promises" and "commitments" clauses). These decisions are in keeping with the Seventh Circuit's pre-*White* decision in *Buckley v. Illinois*, 997 F.2d 224, 230 (7th Cir. 1993), which held unconstitutional Illinois' pledges and promises clause.

Since the Supreme Court's decision in *White*, only one federal court has upheld a commits clause under constitutional challenge. That case, *Pennsylvania Family Institute v. Celluci*, No. 07-1707, WL 3010523 (E.D. Pa. Oct. 16, 2007), involved a challenge to Pennsylvania's commits clause. The court in *Celluci* found that the commits clause as written was unconstitutional, because it prohibited not only commitments but also statements that "appear to commit" a candidate with regard to an issue. *Id.* at *20. However, the court was bound by Third Circuit jurisprudence to accept Pennsylvania's interpretation of the commits clause as

8

applied only to pledges and promises of certain results in particular cases.[1] The

court therefore "delet[ed]" the appear to commit language from the commits clause

and upheld the rewritten clause as constitutional. *Id.*

      This court, in contrast to the Third Circuit, has neither the obligation nor the

power to rewrite state laws.  Indeed, general rules of construction for purposes of

constitutional review require the provision in question to be "reasonably

susceptible to a narrowing construction or . . . narrowly interpreted by the agency

responsible for its enforcement." *Harper v. Office of Disciplinary Counsel,*

*Supreme Court  Harper v. Office of Disciplinary Counsel, Supreme Court of Ohio*,

113 F.3d 1234 (Table), 1997 WL 225899 at *3 (6th Cir. 1997) (*citing United*

*States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 580

(1973)). Thus, as has happened in other circuits, such as the Seventh in *Buckley,*

997 F.2d 224, any proffered narrowing constructions by both the defendants and

the district court can be discarded as unreasonable and inadequate. *See id.* at 229-

30 (finding both the district court and defendants' attempts to narrow the canon

---

[1] The Third Circuit case in question, *Stretton v. Disciplinary Board of the Supreme Court of Pennsylvania,* 944 F.2d 137 (3d Cir. 1991), held that Pennsylvania's announce clause was constitutional. While the specific conclusion in *Stretton* was voided by *White*, the court in *Celluci* held that it was still bound by *Stretton*'s methodology, and thus had to accept the defendants' interpretation of the commits clause even if it meant disregarding the clause's plain language. *Celluci*, 2007 WL 3010523 at *20.

inadequate and refusing to "patch up" the canon to be in accord with the constitution).

The District Court chose to interpret the commits clause very narrowly. Its decision treats the terms  "commits," "pledge," and "promise" interchangeably. (R. 101, Opinion and Order, at 16-17.)  It neglects to address the fact that the clause reaches speech not just about cases but also issues. (R. 101, Opinion and Order, at 17, 21).  And it views the new commits clause to be devoid of the offending "appear to commit" component included in the prior version, despite the inclusion of "perceived as committing" language in the canon itself and the use of "appear to commit" in the commentary. (R. 101, Opinion and Order, at 20.)

The District Court's desire to interpret the commits clause in such a fashion is understandable.  If the clause reached anything more than pledges or promises of certain results in a particular case, it fails constitutionally.  *See infra* Part I.A. However, the clause is not reasonably susceptible to such a reading.

The changes made in an effort to bring the commits clause in accord with *White* and *Family Trust* do not alleviate the problems the *Family Trust* court found. The court there found that the only legitimate scope of the clause would be to prohibit promising to rule in a particular way on an issue likely to come before the court.  *Family Trust,* 345 F. Supp. at 696.  While the legitimacy of reaching speech

10

on issues and matters "likely to come before the court" are questionable under

*White*, the revised version fails to comport with even the *Family Trust* court's

standard.  It still reaches more than promises and only restricts speech during

campaigns.  *Id.* at 697.

While the new version attempts to advance a rule that is in accord with

*White* and *Family Trust*, its changes do not adequately do so.  Based on the weight

of the case law on this issue, as well as the reasons indicated below, this Court

should hold that the commits clause is facially unconstitutional.

### A. The Commits Clause Is Not Narrowly Tailored to Further a Compelling State Interest.

Political speech concerning the qualifications of candidates for public office

is "at the core of our first amendment freedoms." *White*, 536 U.S. at 774 (*quoting*

*Republican Party of Minnesota v. Kelly*, 247 F. 3d 854 (8th Cir. 2001)). Because

commits clause impinge on core political speech, they are subject to survive strict

scrutiny. *White*, 536 U.S. at 774. The District Court properly recognized this

standard of review (R. 101, Opinion and Order, at 9-14.)  To survive strict scrutiny,

the law or regulation in question must be narrowly tailored to further a compelling

government interest. *Eu v. San Francisco County Democratic Cent. Comm.*, 489

U.S. 214, 222 (1989). A law can fail to be narrowly tailored in one of several ways.

It may be overinclusive if it restricts speech that does not implicate the

government's compelling interest in the statute. *Simon & Schuster v. New York State Crime Victims Board*, 502 U.S. 105, 121 (1991). The regulation may also be underinclusive if it fails to restrict speech that does implicate the government's interest. *See*, *e.g.*, *Carey v. Brown*, 447 U.S. 455, 465 (1980). Finally, a regulation can fail to be narrowly tailored if the state's compelling interest can be achieved through a less restrictive means. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 (1990).

Restrictions on judicial campaign speech and conduct are often rationalized on the grounds that such restrictions are necessary to preserve judicial impartiality. In *White,* the Supreme Court considered three possible definitions of this impartiality interest: impartiality as lack of bias towards the parties, impartiality as a lack of preconceptions about legal issues, and impartiality as open-mindedness. *White* 536 U.S. at 775-80. For the reasons discussed below, the commits clause cannot survive strict scrutiny under any of these definitions of impartiality.

The first definition of impartiality considered by *White* was impartiality towards parties. *Id.* at 776. This interest is compelling, and arises because of due process, which requires trial before an unbiased judge. *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971). By its plain terms, however, the commits clause does not restrict speech for or against particular parties, but rather prohibits judges and

judicial candidates from making any "statement that a reasonable person would perceive as committing the judge or candidate to rule a certain way on a case, controversy, or issue that is likely to come before the court." Since the commits clause restricts speech about issues rather than parties, it is only "barely tailored" to Kentucky's interest in preserving judicial impartiality towards parties. *White*, 536 U.S. at 776.

The second definition of impartiality considered by *White* was impartiality defined as a lack of preconceptions on legal issues. This interest was held to be not compelling, as having a judge with no preconceptions on any legal issue is neither possible nor desirable. *See Laird v. Tatum*, 409 U.S. 824, 835 (1972) ("Proof that a Justice's mind at the time he joined the Court was a complete tabula rasa in the area of constitutional adjudication would be evidence of lack of qualifications, not lack of bias.") Thus, the commits clause does not satisfy the compelling interest requirement of strict scrutiny under this definition of impartiality.

The final definition of impartiality considered by *White* is impartiality as judicial open-mindedness. This definition of impartiality "seeks to guarantee each litigant, not an *equal* chance to win the legal points in the case, but at least *some* chance of doing so." *White*, 536 U.S. at 778 (emphasis in original). The Supreme Court did not hold that judicial open-mindedness was a compelling state interest

13

and its legitimacy as a compelling interest is dubious.[2] Nonetheless, the Court held that even if the interest was compelling, the announce clause did not pass strict scrutiny because it was not narrowly tailored to that interest. *Id.*, at 780.

A similar analysis applies here. Like the announce clause in *White*, the commits clause only encompasses statements made by judges and judicial candidates, and does not address statements made before a lawyer announces his or her candidacy. *See id.* at 779-80. Candidates often have already taken a position on legal issues well before they become candidates, either in the form of lectures, books, or law review articles. *Id.* at 779. In essence, the commits clause permits lawyers to take positions on legal issues until the day they declare their candidacy, after which such statements are prohibited. The commits clause is thus grossly underinclusive.

In addition, the commits clause is overinclusive in that it prevents judges and judicial candidates from announcing their views on disputed legal and political issues. As the District Court correctly notes, Kentucky has a legitimate interest in "prohibit[ing] candidates from promising to rule a certain way on cases." (R. 101,

---

[2] Indeed, there would seem to be some issues, such as whether conviction of a crime requires proof beyond a reasonable doubt, where judicial open-mindedness on the issue is undesirable. *See* James Bopp, Jr. and Anita Y. Woudenberg, *An Announce Clause By Any Other Name: The Unconstitutionality of Disciplining Judges Who Fail to Disqualify Themselves For Exercising Their Freedom to Speak,* 55 Drake. L. Rev. 723, 745-50 (2007).

Opinion and Order, at 14, emphasis omitted, *citing Family Trust,* 345 F. Supp. 2d at 695, *Buckley,* 997 F.2d 224, 227 (7th Cir. 1993), *Duwe,* 490 F. Supp. 2d at 975).[3] Mr. Carey does not contest this. If the commits clause only prohibited judicial candidates from "pledging or promising certain results in a particular case or class of cases," no objection to the commits clause could be claimed. But the commits clause seeks to further this interest in the "most comprehensive fashion imaginable." *Buckley*, 997 F.2d at 228. A judge or judicial candidate may take a position, that is, commit or appear to commit, on a legal or political issue without compromising their impartiality. They might promise to be a strict constructionist, or to give indigent litigants a fair shake. *Id.* Yet the commits clause prohibits candidates from making such statements, even where doing so does not amount to a pledge or promise of certain results in a particular case or class of cases. The commits clause is, therefore, substantially overinclusive. *Id.* at 230.

To the extent that the State does have a legitimate interest in preserving judicial open-mindedness, this interest is better served through the election process itself. Voters expect a certain level of decorum in their judicial candidates, and do

---

[3]According to a recent study conducted among Kentucky voters, even pledging and promises to rule a certain way does not affect the legitimacy of the courts. *See* James L. Gibson*, Challenges to the Impartiality of State Supreme Courts: Do "New-Style" Judicial Campaigns Undermine Judicial Legitimacy?,* 102 Am. Political Sci. Rev. 59 (2008), *available at* <http://polisci.wustl.edu/sub_page.php?s=3&m=0&d=7>.

not want judges who do not have an open mind. Because of this, judges showing

partiality risk defeat at the polls, and "the voting public may reject a judicial

candidate who makes excessive or inappropriate campaign pledges." Lloyd B.

Snyder, *The Constitutionality and Consequences of Restrictions on Campaign*

*Speech by Candidates for Judicial Office*, 35 UCLA L. Rev. 207, 248 (1987).; *see*

*also* James Bopp, Jr., *Preserving Judicial Independence: Judicial Elections as the*

*Antidote to Judicial Activism,* 6 First Amendment L. Rev. 180 (2007*)*.[4]

Since it is apparent that judges and judicial candidates have views on

disputed legal or political matters, there is also a danger that silence inspires the

suspicion that they are hiding their views to mask their partiality or bias. Faith in

the impartiality of the judiciary is just as easily lost by implying deceit as by

implying allegiance. Thus, "an enforced silence, however limited, solely in the

name of preserving the dignity of the bench, would probably engender resentment,

suspicion, and contempt much more than it would enhance respect." *Bridges v.*

*California*, 314 U.S. 252, 270-71 (1941).

---

[4] Ironically, speech restrictions undercut the important role voters play in preserving judicial open-mindedness. Preventing a judicial candidate from speaking on an issue will not keep a candidate from lacking an open mind on that issue, but it will keep voters from knowing that he is not open-minded. *See* Alan B. Morrison, *The Judge Has Robes: Keeping the Electorate in the Dark About What Judges Think About the Issues*, 36 Ind. L. Rev. 719, 734 (2003).

In addition, judges themselves also serve as a natural restraint to preserve judicial impartiality. *See Liteky v. United States*, 510 U.S. 540, 562 (1994) (Kennedy, J., concurring) ("Some may argue that a judge will feel the motivation to vindicate a prior conclusion when confronted with a question for the second or third time, for instance, upon trial after a remand. Still, we accept the notion that the conscientious judge will, as far as possible, make himself aware of his biases of their character, and, by that very self-knowledge, nullify their effect. The acquired skill and capacity to disregard extraneous matters is one of the requisites of judicial office.") (internal citations and quotations omitted). Thus, in the current context, judges cannot be disciplined for announcing their views on disputed legal and political issues; the awareness of bias is enough to limit its impact on their decisions.

Because it is underinclusive, overinclusive, and because there are less restrictive means of achieving the state's interest in judicial impartiality, the commits clause is not narrowly tailored to the State's interest in preserving judicial impartiality. It therefore cannot pass strict scrutiny. *See Buckley*, 997 F.2d at 230; *Shepard*, 463 F. Supp. 2d at 889; *Bader*, 361 F. Supp. 2d at 1039-40; *Family Trust*, 345 F. Supp. 2d at 699-700.

### B.    The Commits Clause Is Unconstitutionally Overbroad.

An overbroad law is to be facially invalidated if the impermissible applications of the law are substantial when compared to the law's legitimate application. *Leonardson v. East Lansing,* 896 F.2d 190, 195 (6th Cir. 1990) (*citing Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973)). As such, the overbreadth doctrine prevents a law from having a chilling effect on protected speech. *Id*. A law may suffer from overbreadth problems if it prohibits more speech than is necessary to achieve the drafter's significant interest. *Anderson v. Spear*, 356 F.3d 651, 658 (6th Cir. 2004).

The commits clause bans not only commitments, but also statements which may be "reasonably perceived to commit" a candidate with regard to a given issue. This is impermissible. A person's right to freedom of speech cannot be contingent on the reaction to or interpretation of that speech by third parties. *Grider v. Abramson*, 180 F.3d 839, 749 (6th Cir. 1999) ("government regulation of speech or assembly activities by speakers, motivated by anticipated listener reaction to the content of the implicated communication, is not  content-neutral."). As the Supreme Court noted in *Buckley v. Valeo,* 424 U.S. 1 (1976), making the legitimacy of speech turn on the interpretation of third parties is problematic, as it "puts the speaking . . . wholly at the mercy of the varied understanding of his

18

hearers and consequently of whatever inference may be drawn as to his intent and meaning. [This] offers no security for free discussion. In these conditions its blankets with uncertainty whatever may be said. It compels the speaker to hedge and trim." *Buckley*, 424 U.S. at 43.  Statements involving a judicial candidate's judicial philosophy, that, "for example, pledge himself to be a strict constructionist, or for that matter a legal realist," or which "promise a better shake for indigent litigants or harried employers" are completely subject to the interpretation of the listener, though all are statements on disputed issues. *Buckley,* 997 F.2d at 228.

Moreover, as the Eleventh Circuit held in a related context, judicial candidates' statements cannot be held to such a "reasonableness" standard because it does not allow the necessary "breathing space" for robust campaigning. *See Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002) ("restrictions on candidate speech during political campaigns must be limited to false statements that are made with knowledge of falsity or with reckless disregard as to whether the statement is false - i.e. an actual malice standard.").

The District Court held that the commits clause is not overbroad because it only reaches statements that "intentionally or recklessly commit [a judge] to rule in a particular manner." (Opinion and Order, at 22.) However, the addition of scienter elements of intentionality or recklessness does not narrow the scope of the canon

as intended because a candidate does not know if an intentional statement on his or her part may in fact be "reasonably" viewed by a third party as a commitment to rule a certain way in a case or controversy.

As written, the commits clause would seem to prohibit judicial candidates from announcing their views on issues in written opinions or law review articles on the grounds that in so doing they are "reasonably perceived" as committing themselves to a particular result in a particular case. *See White*, 536 U.S. at 780-81 (noting that judges are more likely to feel constrain to vindicate positions expressed in prior judicial opinions that they are statements made in the course of a campaign). Such a restriction cannot be constitutionally upheld. Neither can the Commonwealth prohibit a candidate from stating the same views in response to a questionnaire without rendering *White* meaningless. Such gross overbreadth cannot be justified by whatever very limited legitimate applications the provision might have. *See Buckley*, 997 F.2d at 230; *Shepard*, 463 F. Supp. 2d at 889; *Bader*, 361 F. Supp. 2d at 1044; *Stout*, 440 F. Supp. 2d at 1232; *Family Trust*, 345 F. Supp. 2d at 697.

Moreover, the impermissible overbreadth of "perceive as committing" is not cured by the fact that its prohibition applies only to judicial candidates and only to

issues "likely to come before the court." Kentucky broadly defines a "judicial candidate" as

> a person seeking selection for retention in judicial office by election or appointment. A person becomes a candidate for judicial office as soon as he or she makes a public announcement of candidacy, declares or files as a candidate with the election or appointment authority, or authorizes solicitation or acceptance of contributions or support.

Ky. S. Ct. R. 4.300, *Terminology*. Thus, any person who simply states in public an intent to someday run for or to remain in elective judicial office is subject to the Canon's prohibition. And, as the Supreme Court observed in *White*, "limiting the scope of the clause to issues likely to come before a court is not much of a limitation at all. . . . '[T]here is almost no legal or political issue that is unlikely to come before a judge of an American court, state or federal, of general jurisdiction.'" *White,* 536 U.S. at 772 (*citing Buckley,* 997 F.2d at 229). *See also* James Bopp, Jr. and Anita Y. Woudenberg, *To Speak or Not to Speak: Unconstitutional Regulation In the Wake of White*, 28 Just. Sys. J. 329, 332 (2007).

The commits clause impermissibly prohibits judicial candidates from announcing their views on disputed political and legal issues. Since such gross overbreadth cannot be justified by the very limited legitimate purpose of preventing judicial candidates from stating what result they will reach in a particular case, the commits clause is facially overbroad. *See Buckley*, 997 F.2d at

21

230; *Shepard*, 463 F. Supp. 2d at 889; *Bader*, 361 F. Supp. 2d at 1044; *Stout*, 440

F. Supp. 2d at 1232; *Family Trust*, 345 F. Supp. 2d at 697.

## C.    The Commits Clause Is Unconstitutionally Vague.

A law is vague if it is not "sufficiently defined so that ordinary people,

exercising ordinary common sense, can understand it and avoid conduct which is

prohibited, without encouragement of arbitrary and discriminatory enforcement."

*United States v. Salisbury*, 983 F.2d 1369, 1377-78 (6th Cir. 1993). And a law is

vague if it "impermissibly delegates basic policy matters to policemen, judges, and

juries for resolution on an ad hoc and subjective basis . . . ." *Grayned v. City of

Rockford*, 408 U.S. 104, 108-09 (1972). Laws regulating First Amendment

freedoms are closely examined to ensure they are precisely drafted. *Buckley,* 424

U.S. at 40-41.

The District Court found the commits clause to be not vague because it

contains an objective commitment test. (R. 101, Opinion and Order, at 20.) As

articulated above, this analysis misses the mark.  By premising the scope of this

provision on the perception of the listener, the commits clause prohibits judicial

speech based on the subjective effect it has on a third party.  It is the involvement

of a listener in assessing the appropriateness of the speech that makes it

unconstitutionally vague: "it blankets with uncertainty whatever may be said. It

22

compels the speaker to hedge and trim." *Buckley,* 424 U.S. 1 at 43 (*quoting*

*Thomas v. Collins,* 323 U.S. 516, 535 (1945)); *see also FEC v. Wisconsin Right to*

*Life,* 127 S. Ct. 2652, 2666 (2007) ("[l]itigation on such a standard may or may not

accurately predict electoral effects, but it will unquestionably chill a substantial

amount of political speech.").

And as discussed above, the Kentucky Supreme Court's efforts to narrow

the breadth of this vagueness by reaching only commitments that are "likely to

come before the court" are ineffective. *See Buckley,* 997 F.2d at 229. Even if this

phrase lends substantive limitations to the commits clause to overcome overbreadth

concerns, the parameters of those limitations are vague. How a candidate will

know what is bound to come before her is uncertain and undoubtedly will chill her

from speaking at all.

Indeed, a reasonable person could interpret the "perceive as committing"

language to include simply stating views on disputed political or legal issues. This

interpretation would forbid incumbent judicial candidates from even stating their

views in judicial opinions, scholarly articles, or speeches to the bar. Yet if the

commits clause does not generally forbid candidates from announcing their views

on legal or political issues, then what does it forbid? There is no guidance from the

clause itself, other than the relatively meaningless requirement that the issue must

be "likely" to come before the candidate as judge for the commits clause to apply. *See White,* 536 U.S. at 772 (*citing Buckley,* 997 F.2d at 229). The scienter requirement offers nothing to clarify these ambiguities in the commits clause. For these reasons, the commits clause is vague. *See Shepard*, 463 F. Supp. 2d at 890.

## Conclusion

The District Court erred in upholding the constitutionality of the commits clause.  Mr. Carey respectfully requests this Court reverse the District Court's ruling on the commits clause and hold that it is facially unconstitutional under the First and Fourteenth Amendments of the United States Constitution.


Dated: March 16, 2009

Respectfully submitted,


/s/ Anita Y. Woudenberg
James Bopp, Jr., Ind. #2838-84
Anita Y. Woudenberg, Ind. #25162-64
Josiah Neeley, Tex. #24046514
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
*Counsel for Plaintiff-Appellant*

## Request for Oral Argument

Pursuant to 6 Cir. R. 34(a), Appellant respectfully requests oral argument to be heard in this matter. This case involves a unique framing of the commits clause and Appellant would like to address any questions this Court may have regarding the provision and the constitutional framework in which this case is cast.

## Certificate of Service

I hereby certify that the foregoing Opening Brief of Plaintiff-Appellant was served electronically on March 16, 2009, upon the following counsel via the Sixth Circuit's electronic filing system:

Mr. Bopp, James, Jr.: jboppjr@aol.com

Ms. Breetz, Bethany A.: bbreetz@stites.com, tarena@stites.com, docketclerk@stites.com

Mr. Hovious, R. Gregg: ghovious@fmhd.com, trhodes@fmhd.com, awhittam@fmhd.com

Mr. Overstreet, Mark R.: moverstreet@stites.com

Ms. Woudenberg, Anita Yvonne: awoudenberg@bopplaw.com

Mr. Neeley, Josiah: jneeley@bopplaw.com


/s/Anita Y. Woudenberg
Anita Y. Woudenberg

# Certificate of Compliance

Pursuant to F.R.A.P  32(a)(7)(A), the undersigned certifies that this Opening Brief of Plaintiff-Appellant Marcus Carey complies with the page limitations:

1.   The Brief does not exceed 30 pages.

2.   The Brief has been prepared in proportionately spaced typeface using Word in Times New Roman, 14 point font.

3.   The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the page limits in Sixth Circuit Rule 32(a)(7), may result in the Court's striking the brief and imposing sanctions against the person signing the Brief.

/s/ Anita Y. Woudenberg
James Bopp, Jr., Ind. #2838-84
Anita Y. Woudenberg, Ind. #25162-64
Josiah Neeley, Tex. #24046514
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
*Counsel for Plaintiff-Appellant*

# Addendum

## Designation of Relevant District Court Documents

In accordance with 6 Cir. R. 30(b), Appellant hereby designates the

following district court documents:

R. 1 – Carey's Complaint

R. 2 – Carey's Motion for Preliminary Injunction

R. 21 – Judicial Inquiry Commission and State Bar's Motion to Dismiss

R. 22 – Judicial Qualification Commission's Motion to Dismiss

R. 35 – Preliminary Injunction Opinion

R. 49 – Motion to Amend Complaint

R. 51 – Order Granting Motion to Amend Complaint

R. 52 – Carey's Amended Complaint

R. 53 – Judicial Qualification Commission's Motion to Dismiss Amended
        Complaint

R. 55 – Judicial Inquiry Commission and State Bar's Motion to Dismiss Amended
        Complaint

R. 75 – Motion to Dismiss Opinion

R. 81 – Carey's Motion for Summary Judgment

R. 93 – Defendants' Motion for Summary Judgment

R. 100 – Summary Judgment Order

R. 101 – Summary Judgment Opinion

R. 102 – Final Judgment of the District Court

R. 106 – Carey's Notice of Appeal

R. 107 – Defendants' Notice of Appeal