Nos. 08-6468, 08-6538
————————————————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

————————————————————————————

**MARCUS CAREY,**

*Plaintiff – Appellant*

**v.**

**STEPHEN D. WOLNITZEK, JAMES L. BOWLING, JR., R. D. DYCHE, III, STEPHEN N. FRAZIER, JOYCE KING JENNINGS, MICHELLE M. KELLER, DIANE E. LOGSDON, WILLIAM P. RYAN, JR., and LEE E. SITLINGER, JR., as members of the Kentucky Judicial Conduct Commission; STEPHEN L. BARKER, MARGARET E. KEANE, and REED N. MOORE, JR., as Panel Chairpersons of the Kentucky Inquiry Commission; LINDA A. GOSNELL, as Bar Counsel to the Kentucky State Bar,**

*Defendants – Cross-Appellants*

————————————————————————————

**Appeal of Final Judgment from the**
**United States District Court for the Eastern District of Kentucky**
*The Honorable Karen K. Caldwell, Judge*
**Civil Action No. 3:06-cv-00036**

————————————————————————————

# RESPONSE/REPLY BRIEF OF PLAINTIFF-APPELLANT

————————————————————————————

**James Bopp, Jr.**
**Anita Y. Woudenberg**
**Josiah Neeley**
**BOPP, COLESON & BOSTROM**
**1 South 6th Street**
**Terre Haute, IN 47807-3510**
**812-232-2434**
*Counsel for Plaintiff-Appellant*

# Table of Contents

Table of Authorities .................................................................... ii

Statement of the Issues..................................................................1

Statement of the Case......................................................................1

Statement of Facts ..........................................................................1

Summary of the Argument On Cross-Appeal............................................3

Argument.......................................................................................5

I.      Standard of Review..............................................................5

        A.    Strict Scrutiny Applies..................................................6

        B.    Openmindedness Is Not A Compelling Interest ...................10

II.     Mr. Carey's Claims Are Ripe ................................................13

III.    The District Court Properly Held The Solicitation Clause Is
        Unconstitutional...............................................................14

        A.    The Solicitation Clause Fails Strict Scrutiny.......................14

        B.    The Solicitation Clause Is Unconstitutionally Overbroad ...................18

IV.     The District Court Properly Held The Political Activities Clause
        Is Unconstitutional............................................................19

        A.    The Political Activities Clause Is Not Justified By A Compelling
              Interest In Preserving Judicial Impartiality ..........................21

        B.    The Political Activities Clause Is Not Justified By A Compelling
              Interest In Preserving Judicial Openmindedness................................24

C.      The Political Activities Clause Is Not Justified By A Compelling Interest In Maintaining Non-Partisan Judicial Elections......................27

D.      The Political Activities Clause Is Not Justified By A Compelling Interest In Maintaining Public Confidence In The Courts ..................28

V.      The District Court Erred In Finding the Commits Clause Constitutional.....31

A.      The Commits Clause Is Facially Vague and Overbroad....................32

B.      The Commits Clause Is Not Narrowly Tailored to Further A Compelling State Interest. ..................................................................37

Conclusion ........................................................................................................39

Request for Oral Argument..................................................................................40

Certificate of Service ..........................................................................................41

Certificate of Compliance ....................................................................................42

# Table of Authorities

## *Cases*

*Anderson v. Spear*, 356 F.3d 651 (6th Cir. 2004).......................................................34

*Bauer v. Shepard,* 2009 WL 1941243 (N.D. Ind. June 7, 2009) ............................37

*Bridges v. California*, 314 U.S. 252 (1941)........................................................26, 30

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973) ..........................................................34

*Buckley v. Illinois*, 997 F.2d 224 (7th Cir. 1993) ........................................... *passim*

*Buckley v. Valeo,* 424 U.S. 1 (1976) ..................................................... 6 n. 8, 33-34

*Bush v. Gore,* 531 U.S. 98 (2000).............................................................................11

*Callins v. Collins,* 510 U.S. 98 (1994).....................................................................11

*California Democratic Party v. Jones,* 530 U.S. 567 (2000) ...................................20

*California Democratic Party v. Lungren,* 919 F. Supp. 1397 (N.D. Cal. 1996).....27

*Caperton v. A.T. Massey Coal Company,* 129 S.Ct. 2252 (2009) ...........................36

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................5

*Duwe v. Alexander*, 490 F. Supp. 2d 968 (W.D. Wis. 2007)............................. 34-35

*Family Trust Foundation of Kentucky v. Kentucky Judicial Conduct*
*    Comm'n,* 345 F. Supp. 2d 672 (E. D. Ky. 2004) ................................ 31-32, 34

*Family Trust Foundation of Kentucky v. Kentucky Judicial Conduct*
*    Comm'n*, 388 F. 3d 224 (6th Cir. 2004)...........................................................6

*FEC v. Wisconsin Right to Life,* 551 U.S. 449 (2007).................................33, 34, 37

*Johnson v. Mississippi*, 403 U.S. 212 (1971) ..........................................................21

*Kansas Judicial Watch v. Stout,* 440 F. Supp. 2d 1209
    (D. Kan. 2006) ..............................................................15, 17, 18, 34

*Kentucky Press Association v. Kentucky,* 454 F. 3d 505 (6th Cir. 2006) ...............13

*Laird v. Tatum*, 409 U.S. 824 (1972)..................................................................21 n. 4

*Leonardson v. East Lansing,* 896 F.2d 190 (6th Cir. 1990) ....................................34

*Pennsylvania Family Institute v. Celluci*, 521 F. Supp. 2d 351
    (E.D. Pa. 2007)..................................................................................35

*Republican Party of Minnesota v. White,* 536 U.S. 765 (2002) ..................... *passim*

*Republican Party of Minnesota v. White,*
    416 F. 3d 738 (8th Cir. 2005) ......................................... 6, 9, 15-30

*Thomas v. Collins,* 323 U.S. 516 (1945)..................................................................35

*Watkins v. City of Battle Creek*, 272 F.3d 682 (6th Cir. 2001)..................................5

*Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002) ...................................... 6, 15-20

*Webster v. Reproductive Health Services,* 492 U.S. 490 (1989) ............................11

### *Constitutions, Statutes, and Rules*

U.S. Const., amend I ....................................................................................... *passim*

U.S. Const., amend. XIV ................................................................................ *passim*

Fed. R. Civ. P. 56(c).........................................................................................5

Ky. S. Ct. R. 4.300, Canon 5A(2) ................................................................ 2, 20-39

Ky. S. Ct. R. 4.300, Canon 5B(2) ................................................. 2, 14-20

M.S.A. § 204B.06 ........................................................................28 n. 8

## Other Authorities

Alan B. Morrison, *The Judge Has Robes: Keeping the Electorate in the Dark About What Judges Think About the Issues*, 36 Ind. L. Rev. 719 (2003)....................................................................................26 n.6

James Bopp, Jr., *Preserving Judicial Independence: Judicial Elections as the Antidote to Judicial Activism,* 6 First Amendment L. Rev. 180 (2007)...................................................................................26

James Bopp, Jr. and Anita Y. Woudenberg, *An Announce Clause By Any Other Name: The Unconstitutionality of Disciplining Judges Who Fail to Disqualify Themselves For Exercising Their Freedom to Speak,* 55 Drake. L. Rev. 723 (2007)............................................................................2

James Bopp, Jr. and Josiah Neeley, *How Not to Reform Judicial Elections:* Davis, White, *and the Future of Judicial Campaign Financing*, 86 Denv. U. L. Rev. 175, 201-206 (2008).. ............................................................ 19-20

Erwin Chemerinsky, *Restrictions On The Speech Of Judicial Candidates Are Unconstitutional*, 35 Ind. L. Rev. 735, 742-43 (2002). ...........................29 n.9

Lloyd B. Snyder, *The Constitutionality and Consequences of Restrictions on Campaign Speech by Candidates for Judicial Office*, 35 UCLA L. Rev. 207 (1987). ..........................................................................26

Benjamin B. Strawn, *Do Judicial Ethics Canons Affect Perceptions of Judicial Impartiality?*, 88 B.U.L. Rev. 781, 785 (2008)............................................29

American Judicature Society, "Methods of Judicial Selection" *available at* http://www.judicialselection.us/judicial_selection/methods/selection _of_judges.cofm?state= .......................................................27 n.7

v

Decision Resources Ltd., *Justice at Stake Study, Minnesota Statewide,* Questions 9, 11 (January 2008), *available at* http://www.justiceatstate.org/files/ MinnesotaJusticeatStakesurvey.pdf.......................................................29 n.10

## Statement of the Issues

I.     Whether the District Court Properly Held The Solicitation
       Clause Unconstitutional.

II.    Whether the District Court Properly Held The Partisan
       Activities Clause Unconstitutional.

III.   Whether the District Court Erred in Holding the Commits
       Clause Constitutionally Prohibits Protected Speech.

## Statement of the Case

Plaintiff Carey does not object to the Commission's Statement of the Case

on its cross-appeal in as much as it is consistent with Plaintiff's Statement of the

Case in his Opening Brief.[1]

## Statement of the Facts

Plaintiff Marcus Carey is resident of Owen County, Kentucky, and 2006

candidate for election to the Supreme Court of Kentucky from the Sixth Appellate

District of the Commonwealth of Kentucky. (R. 51, Amended Complaint, at ¶ 19.)

As a candidate, Carey was bound by the Kentucky Code of Judicial Conduct,

which regulates Kentucky state judicial elections. During the 2006 election, Carey

---

[1] Plaintiff notes that he erroneously stated in the Statement of the Case of his
Opening Brief that the District Court granted him summary judgment as to the
endorsement clause.  The District Court granted him summary judgment as to the
partisan activities clause.  The endorsement clause is not part of either Plaintiff's
appeal or the Commission's cross-appeal.

wished to engage in certain campaign related activities prohibited by this Code. (*Id.* at ¶¶ 19, 20.)

Carey wished to state his political party affiliation and solicit individuals for contributions during his campaign and in subsequent campaigns. (*Id.* at ¶ 20.) Specifically, he wanted to personally solicit funds from those who wish to support him by making personal phone calls and sighing letters asking for financial support. (*Id.* at ¶ 29.)  However, Canon 5B(2) provides in part that "[a] judge or a candidate for judicial office shall not solicit campaign funds, but may establish committees of responsible persons to secure and manage the expenditures of funds for the campaign and to obtain public statements of support for the candidacy." (*Id.* at ¶ 28.)

Mr. Carey was also consistently asked by voters about his party affiliation. He believes that the voters are interested in and deserving of information in this regard and therefore wanted to identify his party registration throughout his campaign. (*Id.* at ¶ 31.)  Canon 5A(2) prohibits a judge or candidate from identifying "himself or herself as a member of a political party . . . [except that] only in answer to a direct question, the judge or candidate may identify himself or herself as a member of a political party." (*Id.* at ¶ 30.)

2

If the District Court's decision to declare the solicitation clause and the partisan activities clause unconstitutional is not upheld, judicial candidates will continue to be banned from personally soliciting funds for their campaigns and from stating their party affiliation during their campaigns. (*Id.* at ¶ 32.)  Carey has been deprived of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution. He has no adequate remedy at law. (*Id.* at ¶ 33.)

## Summary of the Argument On Cross-Appeal

Under *White* and its progeny, canons of judicial conduct that regulate core political speech have been subject to strict scrutiny.  In employing this standard, the courts have ensured that due process interests are considered alongside free speech concerns.   That the candidates involved seek a government position has no bearing on this analysis.  Nor has the type of core political speech affected the use of the strict scrutiny standard.

In recognizing impartiality as a compelling due process interest for strict scrutiny analysis, courts have assumed that openmindedness is a legitimate aspect of impartiality that justifies its compelling status.  The *White* court did not itself recognize it as such.  Nor should this Court.  Openmindedness, while laudably and even desirable in a judge, is a subjective state of mind that cannot be properly

assessed without engaging in a thorough and ultimately inconclusive examination of the context of the speech involved. The undesirable result of such review would be chilled speech.

Kentucky's canons ban personal solicitation of funds by judicial candidates and prohibit such candidates from stating their political affiliation. Each respective canon, the solicitation clause and the partisan activities clause, fail strict scrutiny and are facially overbroad.

The solicitation clause does not serve a compelling interest in impartiality, whether that be in the form of bias for or against parties or openmindness, because judicial candidates can know the source of their funding, whether personally solicited or not. Moreover, the clause does not address unsolicited gifts, which are equally likely to affect bias for a party or their openmindedness. For the same reasons, any interest in preventing corruption is likewise not served by the clause. And because the solicitations clause bans all personal solicitations without exception, it is facially overbroad. The clause prohibits solicitation of those who might give but never would appear before that judge and from those whose cases the judge would most likely recuse from hearing regardless of their contribution.

Likewise, the partisan activities clause does not serve a compelling interest. Because stating one's political affiliation is tantamount to announcing one's views

4

on issues, impartiality is not affected.  The clause also allows party affiliation to be stated if asked, which undermines any purported impartiality concerns the clause might serve.  Moreover, candidates can state their party affiliation up until they announce their candidacy and can have membership in political but nonparty organizations.  And the nonpartisan nature of Kentucky's elections and judiciary are not hampered by statements of political affiliation, nor is public confidence in the judiciary.  The partisan activities clause does not serve a compelling interest.

The District Court properly held that the solicitation clause and the partisan activities clause are unconstitutional restrictions on core political speech.

## Argument

### I.  Standard of Review

This cross-appeal is an appeal from a partial denial of the Commission's motion for summary judgment.  This Court reviews the grant or denial of a motion for summary judgment de novo.  *Watkins v. City of Battle Creek*, 272 F.3d 682, 685 (6th Cir. 2001).  Summary judgment is granted when the record, viewed in light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.    Strict Scrutiny Applies.

In reviewing this matter de novo, the Commission suggests strict scrutiny does not apply.  (Appellees' Br. at 10-16.)  The District Court properly concluded that it does.

Three Circuits have followed *White* and applied strict scrutiny to provisions other than the announce clause. This Circuit applied *White* to Kentucky's pledges and promises clause and commits clause to find that the defendants could not demonstrate a likelihood of success on the merits to justify staying the lower court's preliminary injunction. *Family Trust Foundation of Kentucky, Inc. v. Kentucky Judicial Conduct Commission,* 388 F.3d 224, 227 (6th Cir. 2004).[2] The Eighth Circuit in an *en banc* decision applied the *White* Court's analysis to Minnesota's partisan-activities and solicitation clauses, finding them unconstitutional under strict scrutiny. *Republican Party of Minnesota v. White,* 416 F.3d 738 (8th Cir. 2005) ("*White II*"). And the Eleventh Circuit in *Weaver v. Bonner,* 309 F.3d 1312 (11th Cir. 2002), relied on *White* to apply strict scrutiny to Georgia's canons that prohibited judicial candidates from making negligent false statements and misleading or deceptive true statements and from personally soliciting campaign funds, as well as a provision permitting the commission to

[2] Also relevant is *Buckley v. Illinois*, 997 F.2d 224 (7th Cir. 1993), a pre-*White* case striking down Illinois' "pledges and promises" and "announce" clauses.

issue a cease and desist order to the candidate for violating those provision.

Yet the Commission asserts that strict scrutiny is not appropriate for three reasons. First, it argues that *White* did not take into account due process considerations, which would dictate using a balancing approach. (Appellees' Br. 10-13.) Second, it contends that because the clauses apply to officers of the court, strict scrutiny does not apply. (Appellees' Br. 14-16.)  Third, it argues that at least with the solicitation clause and the partisan activities clause, "core political speech" is not involved and so should be subject to a less exacting standard. (Appellees' 16-19.)

A similar appeal to due process was made in *White* as a justification for the announce clause. *White*, 536 U.S. at 775 ("The Court of Appeals concluded that respondents had established [an interest] sufficiently compelling to justify the announce clause: preserving the impartiality of the state judiciary . . . Respondents reassert [this interest], arguing that [it] is compelling because it protects the due process rights of litigants . . . ."). In its analysis in *White*, the Supreme Court specifically acknowledged the relevance of due process in its reasoning:

> One meaning of 'impartiality' in the judicial context – and of course its root meaning – is the lack of bias for or against either *party* to the proceeding . . . . It is also the sense in which it is used in the cases cited by respondents and *amici* for the proposition that an impartial judge is essential to due process.

7

*Id.* at 776 (emphasis in original). Indeed, it is because of this relevance that the Court held this interest to be compelling. *Id.* In defining impartiality, the Court specifically recognized those definitions that were in accord with due process – bias for or against a party, *id.* at 776, and, possibly, open-mindedness.[3] *Id.* at 778 ("This sort of impartiality seeks to guarantee each litigant, not an equal chance to win the legal points in the case, but at least some chance of doing so"). Thus, the Commission's concerns about due process, while appropriate, are already part of the analysis provided by the Court in *White*.

In support of its claim that a lower standard of review applies to officers of the court, the Commission cites *Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991). (Appellees' Br. at 14-16.) Yet *Gentile*'s less rigorous standard of review only applies in a very narrow context: "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard." *Id.* at 1074. Indeed, the court notes that it "express[es] no opinion on the constitutionality of a rule regulating the statements of a lawyer who is not participating in the pending case about which the statements are made." *Id.* at 1073 n.5. A candidate for judicial office is not running for office as an officer of the court or as a

---

[3] The Court did not reach the issue of whether open-mindedness was a compelling interest because it held that the canon challenged was not crafted to reflect that interest. *White,* 536 U.S. at 778.

8

consequence of his role as an officer of the court, but as a citizen with qualifications to serve as an officer of the court. And inasmuch as his speech relates to a pending case, the states can legitimately regulate such speech by prohibiting "pledges or promises of certain results in a particular case." *White*, 536 U.S. at 813. Anything less than strict scrutiny of First Amendment speech in this context is unjustified.

Last, the Commission's assertion that the solicitation clause reaches a lesser-protected form of political speech is unfounded. (Appellees' Br. at 17.) Personal solicitation of funds is core political speech. *White II,* 416 F.3d 749, n.4. It is not a regulation analogous to a limitation on how much one can contribute, as the Commission argues. It is rather a complete ban on a candidate's direct political speech. *Id.* The lesser standard of review applied to contributions is not relevant in this context. *See Siefert v. Alexander*, 597 F. Supp. 2d 860, 867-871 (W.D. Wis. 2009).

As the District Court states, all three clauses involved in this appeal and cross-appeal are content-based regulations of core political speech. (R. 101, Opinion at 13.) Thus, "the First Amendment simply cannot tolerate [the] restriction upon the freedom of a candidate to speak without legislative limit on behalf of his own candidacy." *Buckley v. Valeo*, 424 U.S. 1, 54 (1976). Because no valid

9

justification exists to warrant lowering the level of scrutiny applied to the canons challenged, this Court should apply strict scrutiny.

**B.      Openmindedness Is Not A Compelling Interest.**

Within the strict scrutiny framework, a compelling interest must be asserted. The Commission asserts that an impartiality interest in an openminded judge is the Commonwealth's impetus for these clauses. (Appellees' Br. at 36.) While the *White* court recognized impartiality as a compelling interest, it did not hold that judicial openmindedness was a compelling state interest, holding that the announce clause was not narrowly tailored to this interest in any event. *White,* 536 U.S. at 778 ("It may well be that impartiality [in the sense of openmindedness] and the appearance of it, are desirable in the judiciary, but we need not pursue that inquiry, since we do not believe the Minnesota Supreme Court adopted the announce clause for that purpose.") Nor should this Court. While openmindedness is no doubt valuable as an aspirational goal for judges, as a basis for prohibiting speech it is problematic.

Openmindedness is an improper standard by which to judge speech because it is inherently subjective. Openmindedness is an inner disposition, and as such it is extremely difficult to prove its presence or absence in a given case. Openmindedness does not preclude judges from having opinions on legal issues,

10

even firmly held and strongly stated ones. *See id.* (openmindedness requires of a judge "not that he have no preconceptions on legal issues, but that he be willing to consider views that oppose his preconceptions, and remain open to persuasion, when the issues arise in a pending case.") Judges often have strong legal opinions which can be forcefully stated. *See, e.g.*, *Webster v. Reproductive Health Services*, 492 U.S. 490, 532 (1989) (Scalia, J., concurring) ("Justice O'Connor's assertion, that a 'fundamental rule of judicial restraint' requires us to avoid reconsidering *Roe*, cannot be taken seriously."); *Bush v. Gore*, 531 U.S. 98, 128-129 (2000) ("Although we may never know with complete certainty the identity of the winner of this year's Presidential election, the identity of the loser is perfectly clear. It is the Nation's confidence in the judge as an impartial guardian of the rule of law."); *Callins v. Collins*, 510 U.S. 1141, 1145 (1994) (Blackmun, J., dissenting) ("From this day forward, I no longer shall tinker with the machinery of death.") Such statements do not, however, prove that a judge is not openminded, as a judge might have a strongly held view, and yet still be open to contrary arguments and evidence.

Because openmindedness is not a matter not of what a judge says but of his frame of mind, it cannot be adequately determined from a particular statement. The same statement, made by two different judges, may in one case be an expression

11

that the judge is closeminded, while in the other it may not. Any attempt to restrict speech based on concerns about openmindedness would thus necessarily involve hypothesizing about the inner workings of a judge's psyche, and would, ironically enough, leave judges vulnerable to the biases and preconceptions of enforcement agencies. As the Supreme Court noted in *Buckley v. Valeo*, making the legitimacy of speech turn on the interpretation of third parties is problematic, as it "puts the speaker . . . wholly at the mercy of the varied understanding of his hearers and consequently of whatever inference may be drawn as to his intent and meaning. [This] offers no security for free discussion. In these conditions it blankets with uncertainty whatever may be said. It compels the speaker to hedge and trim." *Buckley*, 424 U.S. at 43. Thus, Kentucky's interest in preserving judicial openmindedness cannot be a compelling interest justifying the suppression of speech. *See* James Bopp, Jr. and Anita Y. Woudenberg, *An Announce Clause By Any Other Name: The Unconstitutionality of Disciplining Judges Who Fail to Disqualify Themselves for Exercising Their Freedom to Speak,* 55 Drake L. Rev. 723, 745-750 (2007) (discussing the problems attendant to openmindedness as an compelling interest).

12

## II.  Mr. Carey's Claims Are Ripe.

The Commission contends that Mr. Carey's claims against the canons are not ripe.  (Appellees' Br. at 20.)  Specifically, the Commission contends that how the Kentucky courts would construe the canons and in turn the possibility of Mr. Carey's injury is far from clear, relying on this Court's decision in *Kentucky Press Association v. Kentucky,* 454 F.3d 505 (6th Cir. 2006).  In *Kentucky Press*, this Court held that the claims the Kentucky Press Association presented, that it had been denied access to juvenile proceedings were not ripe because it was not clear that the Kentucky courts would deny *all* media access as it claimed.  *Id.* at 509. The KPA had not adequately demonstrated that the likelihood that the harm it alleged—that Kentucky denies all media access to juvenile proceedings—would come to pass, the first prong of ripeness analysis. *Id.* at 509.

With regard to the commits clause, Mr. Carey's harm has already come to pass.  He has already been objectively chilled by the vague and overbroad language of the commits clause.  Whether he would be disciplined for his speech is unknowable, not because the commits clause is "reasonably susceptible of constructions that might undercut or modify Mr. Carey's attacks," (Appellees' Br. at 22), but because he will not speak with the commits clause in force.  This chill is neither amorphous nor hypothetical, contrary to the Commission's assertion.

13

(Appellees' Br. at 21.)  Insomuch as it is "far from certain" how the Kentucky courts would rule, (Appellees' Br. at 22), this merely underscores the vague nature of the clause, not the unripeness of Mr. Carey's claim against the commits clause.

As to the solicitation clause and the partisan activities clause, there is no doubt that these provisions will be interpreted as they are drafted.  These clauses are not vague or unclear: they expressly ban personal solicitations and announcements of political affiliation.  A violation of these clauses would result in discipline.  Mr. Carey's pre-enforcement claims are ripe for adjudication.

## III. The District Court Properly Held The Solicitation Clause Is Unconstitutional.

Canon 5B(2) prohibits judicial candidates from "solicit[ing] campaign funds" but allows the candidate to "establish committees of responsible persons to secure and manage the expenditure of funds for the campaign and to obtain public statements of support for the candidacy."  It is the first part of this provision, banning personal solicitations that Mr. Carey challenges.

In appealing the District Court's ruling of the solicitation clause, the Commission offers no case law.  Precedent exists on the matter that the District Court considered, which warrants striking the solicitation clause as unconstitutional.  *See White II,* 416 F.3d 738; *Weaver,* 309 F.3d 1312; *Siefert,* 597 F. Supp. 2d 860.

14

**A.    The Solicitation Clause Fails Strict Scrutiny.**

Soliciting contributions is an essential part of any election campaign. *See Weaver*, 309 F.3d at 1322 ("Campaigning for elected office necessarily entails raising campaign funds,"); *see also White*, 536 U.S. at 789 ("Unless the pool of judicial candidates is limited to those wealthy enough to independently fund their campaigns, a limitation unrelated to judicial skill, the cost of campaigning requires judicial candidates to engage in fundraising.") A solicitation clause "depends wholly upon the subject matter of the speech for its invocation." *White II*, 416 F.3d at 763. As such, the solicitation clauses are content-based regulations of core political speech, and subject to strict scrutiny. *Id.* at 763-64; *Weaver*, 309 F.3d at 1322; *Kansas Judicial Watch*, 440 F. Supp. 2d at 1237.

The solicitation clause is not narrowly tailored to further any compelling interest Kentucky has in either preserving judicial impartiality towards parties, or in preserving judicial openmindedness. The solicitation clause does not prevent a judicial candidate such as Mr. Carey from knowing who has donated to his campaign, but instead merely prohibit the candidate from soliciting funds and permit the candidate to "establish committees of responsible persons to solicit and accept reasonable campaign contributions, to manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her

15

candidacy." "Successful candidates will feel beholden to the people who helped them get elected regardless of who did the soliciting." *Weaver*, 309 F.3d at 1323. The solicitation clause does not significantly reduce the risk of judicial partiality by only allowing the candidate's committee, rather than the candidate, to seek funds. *Weaver,* 309 F.3d at 1322-23. As such, the solicitation clause does not serve a compelling interest in preserving impartiality as to parties.

The solicitation clause is not justified by Kentucky's interest preserving openmindedness, both because that interest is not compelling, and because the solicitation clause is underinclusive. By only prohibiting judicial candidates such as Mr. Carey from personally soliciting while allowing them to know who has donated to their campaign, the solicitation clause does not adequately ensure that a judge will be openminded and unaffected by the source of contributions made during his campaign. *Weaver,* 309 F.3d at 1322-23.

Additionally, the provisions only consider funds solicited by candidates and their committees, disregarding funds voluntarily offered without solicitation. A judge's openmindedness can also be affected by funds secured from those who approach the candidate of their own volition and offer financial support. Because they only restrict a judicial candidate from soliciting funds rather than prohibiting a judicial candidate from accepting any funds, the solicitation clause is

16

underinclusive and fails strict scrutiny. *See White,* 536 U.S. at 779-80; *White II,* 416 F.3d at 757.

Arguably, the solicitation clause is designed to preserve impartiality by preventing judicial corruption because of financial support given to judges during their campaigns. *White II,* 416 F.3d at 764. It is not drafted to reflect such an interest, however, because they do not prohibit judicial candidates from knowing from whom their financial support comes, but instead merely require judicial candidates' committees, rather than the candidates themselves, to solicit the funds. The solicitation clause is thus inadequately drafted to serve such an interest. *White II*, 416 F.3d at 764; *Weaver*, 309 F.3d at 1322; *Kansas Judicial Watch*, 440 F. Supp. 2d at 1237.

"Campaigning for elected office necessarily entails raising campaign funds," and "the fact that judicial candidates require financial support . . . to run successful campaigns does not suggest that they will be partial if they are elected." *Weaver,* 309 F.2d at 1322. On the contrary, to the extent that judicial candidates soliciting campaign contributions raises impartiality concerns, "are created by the State's decision to elect judges publicly." *Id.* As noted by Justice O'Connor in *White*:

> Minnesota has chosen to select its judges through contested popular elections . . . . In doing so the State has voluntarily taken on the risks to judicial bias described above. As a result, the State's claim that it needs to significantly restrict judges' speech in order to protect judicial

impartiality is particularly troubling. If the State has a problem with judicial impartiality, it is largely one the State brought upon itself by continuing the practice of popularly electing judges.

*White,* 536 U.S. at 792 (O'Connor, J., concurring); *see also White*, 536 U.S. at 788 (*quoting Renne v. Geary,* 501 U.S. 312, 349, (1991) (Marshall, J., dissenting)) ("If the State chooses to tap the energy and the legitimizing power of the democratic process, it must accord the participants in that process . . . the First Amendment rights that attach to their roles.") Because the impartiality concerns, if any, are of Kentucky's own making, the state cannot use these concerns as a grounds for restricting core political speech. *White II*, 416 F.3d at 764; *Weaver*, 309 F.3d at 1322; *Kansas Judicial Watch*, 440 F. Supp. 2d at 1237. The solicitation clause fails strict scrutiny.

**B.     The Solicitation Clause Is Unconstitutionally Overbroad.**

In addition to failing strict scrutiny, the solicitation clause is invalid on overbreadth grounds. While the Commonwealth does have an interest in preventing judicial solicitations based on a *quid pro quo*, this interest does not justify a total prohibition on soliciting funds. Campaigning for elective office "necessarily entails raising campaign funds," and any impartiality concerns raised by such practices are inherent in a state's decision to elect judges in the first place. *Weaver,* 309 F.3d at 1322-23; *see also White* 536 U.S. at 789 (O'Connor, J.,

18

concurring) ("Unless the pool of judicial candidates is limited to those wealthy enough to independently fund their campaigns, a limitation unrelated to judicial skill, the cost of campaigning requires judicial candidates to engage in fundraising.") The solicitation clause does not accommodate for solicitations from those who might give to the judicial candidate's campaign but have no likelihood of appearing before that judge, such as an out-of-state acquaintance, or for those whom the judge would most likely recuse himself from the matter, such as a family member for very close friend.  It also includes within its scope the conduct that Mr. Carey wishes to engage in: he wishes to personally sign letters soliciting funds, a form of indirect communication which is likely to have little corruptive effect and nominal bearing on his future ability to be impartial because he does not himself receive the response to his request.  The solicitation clauses create an unnecessary and substantial prohibition upon judicial candidates' protected speech. For this reason, the solicitation clause is unconstitutionally overbroad.

The District Court properly held that the solicitation clause was unconstitutional under the First Amendment.  *See* James Bopp, Jr. and Josiah Neeley, *How Not to Reform Judicial Elections:* Davis, White, *and the Future of Judicial Campaign Financing*, 86 Denv. U. L. Rev. 175, 201-206 (2008).

19

## IV.  The District Court Properly Held The Partisan Activities Clause Is Unconstitutional.

Canon 5A(2) provides that "[a] judge or candidate shall not identify himself or herself as a member of a political party in any form of advertising, or when speaking to a gathering.  If not intiated by the judge or candidate for such office, and only in answer to a direct question, the judge or candidate may identify himself or herself as a member of a particular political party."  Restrictions on political party membership by judges have been declared unconstitutional by other federal courts. *White II*, 416 F.3d at 755; *Siefert*, 597 F. Supp. 2d 860.

The right to associate with a political party is "a particularly important political right" under the Constitution. *See Randall v. Sorrell*, 548 U.S. 230, 256 (2006); *see also California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) ("Representative democracy in any populous unit of governance is unimaginable without the ability of citizens to band together in promoting among the electorate candidates who espouse their political views.") The partisan activities clause directly limits judicial candidates rights of free speech and association, and is therefore subject to strict scrutiny. *White II*, 416 F.3d at 749; *Siefert,* 597 F. Supp. 2d at 867-871.

For the reasons indicated below, the partisan activities clause is not narrowly tailored to any compelling government interest, and is thus unconstitutional.

20

**A.     The Partisan Activities Clause Is Not Justified by A Compelling Interest in Preserving Judicial Impartiality.**

The only recognized compelling interest justifying restrictions on judicial campaign speech and conduct is the state's interest in preserving judicial impartiality towards parties. *White*, 536 U.S. at 776.[4] This interest arises because of due process, which requires trial before an unbiased judge. *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971). While the Supreme Court found this interest compelling, it concluded that the announce clause was "barely tailored to serve that interest at all, inasmuch as it does not restrict speech for or against particular parties, but rather speech for or against particular issues." *White*, 536 U.S. at 776.

A similar analysis should apply here. As noted by the Eighth Circuit, "the underlying rationale for the [prohibiting judicial candidates from belonging to political parties] – that *associating with a particular group* will destroy a judge's impartiality – differs only in form from that which purportedly supports the announce clause – that *expressing one's self on particular issues* will destroy a judge's impartiality." *White II*, 416 F.3d at 754. The fact that a judge belongs to a particular political party might warrant a judge's recusal in a case where that

---

[4] *White* contrasted judicial impartiality as to parties with judicial impartiality as to issues, something that, according to the Court, was neither a possible nor a desirable quality in a judge. *White*, 536 U.S. at 777 (*quoting Laird v. Tatum*, 409 U.S. 824, 835 (1972) ("Proof that a Justice's mind at the time he joined the Court was a complete tabula rasa in the area of constitutional adjudication would be

political party was a party.[5] But the partisan activities clause is overinclusive of this interest, in that it prohibits a judge or candidate from belonging to a political party altogether, instead of employing the less restrictive means of recusal in appropriate cases.

Nothing in *White* suggests that judges are protected by the First Amendment only in their directly campaign-related activities. The right to associate with a political party is "a particularly important political right" under the Constitution, and remains so regardless of whether it is to the electoral advantage of a particular judicial candidate. *See Randall*, 548 U.S. at 256.

The partisan activities clause is also "woefully underinclusive" of the state's interest in preserving judicial impartiality towards parties.  It allows candidates to belong to and associate with political parties up until the day before they declare their candidacy. *White II*, 416 F.3d at 758 ("The partisan-activities clause bars a judicial candidate from associative activities with a political party during a campaign, though he may have been a life-long, active member of a political party (even accepting partisan endorsements for nonjudicial offices) up until the day he begins his run for a judicial seat.").

---

evidence of lack of qualifications, not lack of bias")).

[5] This is not to say, of course, that recusal would be warranted in every case involving a political party of which the sitting judge was a member. *See White II*, 416 F.3d at 755.

Moreover, the partisan activities clause allows a candidate to identify his or her political party affiliation if directed asked.  That judicial impartiality somehow is threatened by announcing publicly one's political affiliation but not so when addressing individuals is not credible.

Aside from the exception for direct inquiries, the partisan activities clause is also underinclusive in that it bans only political party membership, while allowing judges and judicial candidates to be members of other political organizations and groups, such as Mothers Against Drunk Driving or the Sierra Club, even though the risk to judicial impartiality associated with belonging to a political party is no greater than the risk that comes from belonging to other political organizations or groups. *See White II*, 416 F.3d at 759 ("A judicial candidate's stand . . . on the importance of the right to keep and bear arms may not be obvious from her choice of political party. But, there can be little doubt about her views if she is a member of . . . the NRA."); *Siefert,* 597 F. Supp. 2d at 879-882.

Thus, the partisan activities clause is not narrowly tailored to the State's interest in preserving judicial impartiality towards parties. *White II*, 416 F.3d at 766; *Siefert,* 597 F. Supp. 2d at 873.

**B.    The Partisan Activities Clause Is Not Justified by A Compelling Interest in Preserving Judicial Openmindedness**.

In addition to preserving judicial impartiality towards parties, the *White* Court considered the possibility that states had a compelling interest in preserving judicial openmindedness. As defined by *White*, judicial openmindedness is the quality in a judge that "demands, not that he have no preconceptions on legal issues, but that he be willing to consider views that oppose his preconceptions, and remain open to persuasion, when the issues arise in a pending case," and "seeks to guarantee each litigant, not an *equal* chance to win the legal points in the case, but at least *some* chance of doing so." *White,* 536 U.S. at 778 (emphasis in original).

Assuming openmindedness is a compelling interest, *see supra* Part I.B., partisan activities clause is still unconstitutional, as it is "woefully underinclusive" as to that interest, for three reasons. *White*, 536 U.S. at 780. First, the clause is underinclusive in that it allows candidates to belong to and associate with political parties up until the day before they declare their candidacy. "The few months a candidate is ostensibly purged of his association with a political party can hardly be expected to suddenly open the mind of a candidate who has engaged in years of prior political activity." *White II*, 416 F.3d at 758. Second, the political affiliation clause is underinclusive in that it bars only membership in a political party, while permitting a judge or judicial candidate to join other political organizations and

24

groups. To the extent that being a member of a political party might threaten a judge's openmindedness on certain legal and political issues, this threat is at least as present for judges who are members of other interest groups, if not more so. *See id.* at 759 ("A judicial candidate's stand . . . on the importance of the right to keep and bear arms may not be obvious from her choice of political party. But, there can be little doubt about her views if she is a member of . . . the NRA.") Finally, as noted above, the partisan activities clause allows individuals to identify the party affiliation of a judicial candidate. As consequence, the political affiliation clause is "so woefully underinclusive as to render belief in that purpose a challenge to the credulous." *White*, 536 U.S. at 780.

To the extent that the Commonwealth does have a legitimate interest in preserving judicial openmindedness, this interest is better served through the election process itself. Voters expect a certain level of decorum in their judicial candidates, and do not want judges who do not have an open mind. Because of this, judges showing partiality risk defeat at the polls, and "the voting public may reject a judicial candidate who makes excessive or inappropriate campaign pledges." Lloyd B. Snyder, *The Constitutionality and Consequences of Restrictions on Campaign Speech by Candidates for Judicial Office*, 35 UCLA L. Rev. 207, 248 (1987); *see also* James Bopp, Jr., *Preserving Judicial Independence: Judicial*

*Elections as the Antidote to Judicial Activism,* 6 First Amend. L. Rev. 180, 190-91 (2007) (describing instances where judges have been defeated in elections for making improper statements).[6]

Since it is apparent that judges and judicial candidates have views on disputed legal or political matters, there is also a danger that silence inspires the suspicion that they are hiding their views to mask their partiality or bias. Faith in the impartiality of the judiciary is just as easily lost by implying deceit as by implying allegiance. Thus, "an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect." *Bridges v. California*, 314 U.S. 252, 270-71 (1941). For the reasons expressed in *White* and *White II*, the political affiliations clause is not narrowly tailored to Kentucky's interest in preserving judicial impartiality towards parties, and should be deemed unconstitutional.

---

[6] Ironically, speech restrictions undercut the important role voters play in preserving judicial openmindedness. Preventing a judicial candidate from speaking on an issue will not keep a candidate from lacking an open mind on that issue, but it will keep voters from knowing that he is not openminded. *See* Alan B. Morrison, *The Judge Has Robes: Keeping the Electorate in the Dark About What Judges Think About the Issues*, 36 Ind. L. Rev. 719, 734 (2003).

**C.    The Partisan Activities Clause Is Not Justified by A Compelling Interest in Maintaining Non-Partisan Judicial Elections.**

The Commission contends that the nonpartisan nature of Kentucky's judicial elections justifies the partisan activities clause. (Appellees' Br. at 62.) Mr. Carey does not challenge the constitutionality of Kentucky's nonpartisan judicial elections.  He only wants to be able to volunteer his party affiliation regardless of whether he is asked.

Many states currently hold non-partisan elections for various state or local offices, yet do not prohibit candidates in those races from affiliating with a political party.[7] Nor could they do so without violating the First Amendment. *See e.g., California Democratic Party v. Lungren*, 919 F. Supp. 1397 (N.D. Cal. 1996) (holding unconstitutional on First Amendment grounds a California provision prohibiting political parties from endorsing candidates in non-partisan races). *White II* is instructive in this regard. *White II* involved a Minnesota judicial canon that prohibited judicial candidates from "identify[ing] themselves as members of a

---

[7] According to the American Judicature Society, at least a dozen states employ officially partisan elections for at least some judicial offices *See* American Judicature Society, "Methods of Judicial Selection" *available at* http://www.judicialselection.us/judicial_selection/methods/selection_of_judges.cofm?state= (listing Alabama, Illinois, Kansas, Louisiana, Michigan, New Mexico, New York, Ohio, Pennsylvania, Tennessee, Texas, and West Virginia as states employing partisan elections for at least some judicial offices).

27

political organization, except as necessary to vote in an election." *White II*, 416

F.3d at 746. The defendants in *White II* attempted to justify this provision on the

grounds that it was "necessary to protect Minnesota's tradition of non-partisan

judicial elections." *Id.* at 779 (Gibson, J., dissenting).[8] The Eighth Circuit,

however, rejected this argument, holding that the state's interest in maintaining an

independent and non-partisan judiciary did not justify suppressing protected

political speech. *Id.* at 753.  The partisan activities clause does not serve an interest

in nonpartisan elections.

### D.    The Partisan Activities Clause Is Not Justified by An Interest in Maintaining Public Confidence in the Courts.

While the Commission does not argue that the political affiliation clause is

necessary to prevent actual bias on the part of judges, it contend that the provision

causes "the perception of bias, favoritism, and undue influence" to be reduced.

(Appellees' Br. at 62.) This argument is inaccurate, for several reasons. First, it is

not at all clear that stating one's party affiliation, if allowed, would actually

increase the perception of bias, favoritism, and undue influence of judges.[9]

---

[8] Like Kentucky, Minnesota's judicial elections are non-partisan. M.S.A. §
204B.06.

[9] *See* Erwin Chemerinsky, *Restrictions On The Speech Of Judicial Candidates Are
Unconstitutional*, 35 Ind. L. Rev. 735, 742-43 (2002) (arguing that "public

28

Minnesota, for example, allows judges to belong to political parties. Yet a recent poll of Minnesota residents found widespread public confidence in the courts, with 74% of respondents saying that they had "a great deal" or "some" confidence in the courts, and 76% saying that they had "a great deal" or "some" confidence in judges (higher rates than for any other category except the medical profession).[10] In fact, the evidence tends to suggest that, generally "the strictness of a state's code of judicial conduct does not significantly affect how impartially that state's judges are perceived." Benjamin B. Strawn, *Do Judicial Ethics Canons Affect Perceptions of Judicial Impartiality?*, 88 B.U.L. Rev. 781, 785 (2008).

Far from undermining confidence in the judiciary, judicial elections can actually increase the perceived legitimacy of the judiciary, by giving the public a stake in the selection of judges, rather than having them selected through a sometimes secretive and political appointment process. In order to "tap the energy and the legitimizing power of the democratic process," however, states "must accord the participants in that process . . . the First Amendment rights that attach to their roles." *White*, 536 U.S. at 788 (*quoting Renne,* 501 U.S. at 349 (Marshall, J.,

---

confidence in the courts is [not] fragile; quite the contrary, it seems resilient and a product of over 200 years of American history.").

[10] Decision Resources Ltd., *Justice at Stake Study, Minnesota Statewide,* Questions 9, 11 (January 2008), *available at* http://www.justiceatstate.org/files/MinnesotaJusticeatStakesurvey.pdf.

dissenting)). Restrictions on a judge's ability to state his party affiliation could undermine public confidence in the judiciary, since there is a danger that silence on the part of judicial candidates could inspire the suspicion that they are hiding their views to mask their partiality or bias. *Bridges*, 314 U.S. at 270-71 ("[A]n enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.")

In addition, while maintaining public confidence in the judiciary is no doubt important, no court has ever suggested that the state is justified in suppressing core political speech in order to maintain a positive public perception of the judiciary. No doubt public confidence in the judiciary could be damaged by private criticism of judges, their decisions, or the court system as a whole by individual citizens. Yet it would be absurd to suggest that this fact would make it permissible to ban anything that might result in criticism of the courts. Rather, the underlying assumption of the First Amendment is that public confidence in our institutions is strengthened when free and open debate is the norm. As such, Kentucky's interest is preserving public confidence in the judiciary does not justify the challenged Canons.

**V. The District Court Erred In Finding The Commits Clause Constitutional.**

The fundamental failing of both the District Court opinion and the arguments the Commission asserts is that both do not properly address the meaning and scope of the commits clause. While both claim the commits clause is cured of facial defects because it comports with *White* and *Family Trust*, under closer examination, it is clear that it is not.

In *White*, the United States Supreme Court recognized that states could constitutionally regulate judicial speech that pledged or promise certain results in a particular case. *Id.* at 813. Subsequently, in addressing Kentucky's code of judicial conduct, the United States District Court for the Eastern District of Kentucky held that inasmuch as the code prohibited judicial candidates from promising to rule in a certain way in cases, controversies, or issues likely to come before the court, such a rule would be constitutional.[11] *Family Trust Foundation of Kentucky v. Kentucky Judicial Conduct Comm'n,* 345 F. Supp. 2d 672, 695 (E.D. Ky. 2004). Yet, in revising its code, the Commonwealth adopted neither. It offers no explanation to justify its adoption of a rule that is both broader and less clear than both the district court's rule and the Supreme Court's even narrower rule. And it is rife with problems.

---

[11] Whether this rule would be equally constitutional is dubious, most notably because it still reaches "issues likely to come before the court," a scope expressly

In rejecting the *White* and *Family Trust* interpretations offered to it, the Kentucky Supreme Court made clear what the new commits clause does not mean. In choosing the word "commit," it is clear that it did not intend to only reach "pledges and promises." In including statements that "a reasonable person would perceive as committing" in the canon and "appearance of a commitment" in the Commentary, the court did not intend to do away with the offending "appears to commit" language that has been consistently struck down as unconstitutional. And in including "issue that is likely to come before the court," the court did not intend to restrict the provision to only reach "certain results in a particular case." This undermines both the Commission's contention and the District Court's assumptions that the commits clause was crafted to reflect *White* and *Family Trust*.

## A.    The Commits Clause Is Facially Vague and Overbroad.

The Commission argues that Mr. Carey "conflate[s] Kentucky's current Commits Clause with the announce clause struck down in *White*." (Appellees' Br. at 42.) Yet the actual intended scope of the commits clause is unclear. What constitutes a commitment? More perplexingly, how does a candidate know someone else might reasonably perceive a statement as a commitment? The parameter of "committing to rule a certain way" might be somewhat helpful in regard to cases and controversies. A candidate could at least know with certainty

dealt with in *White*.                                    32

that she cannot pledge a certain result in a case, though certainly not much else, since it is clear that more is intended.

This is confounded by the inclusion of "issues likely to come before the court." When does a candidate appear to commit to rule a certain way on an issue likely to come before the court?[12] It is of little wonder that the clause would cause judicial candidates like Mr. Carey to refrain from even announcing their views. The alternative is to speak and potentially undergo "a burdensome, expert-driven inquiry, with an indeterminate result." *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 469 (2007).

Announcements about the meaning of state constitutional provisions, or that a Kentucky court wrongly decided a case could reasonably implicate the commits clause. Constitutionally protected statements as innocuous as "I am pro-life," "I am pro-choice," or "I support traditional marriage" reflect an intellectual commitment of a sort that a reasonable person could view as a commitment to rule in a certain way on all issues involving abortion or marriage. *See Buckley*, 977 F.2d at 228. And since these statements are turn on a third party's perceptions, the scienter requirement of the commits clause is not constitutionally meaningful.

---

[12] More troubling is the presumption that impartiality is not at stake were a judicial candidate to appear to commit to rule a certain way on an issue *not* likely to come before the court.

It is these problems that give rise to the commits clause's facial unconstitutionality. While it is uncertain as to what all it includes, it is certain that the commits clause includes more than it should, namely, announcements on disputed legal and political issues. The uncertainties make the commits clause vague. *United States v. Salisbury*, 983 F.2d 1369, 1377-78 (6th Cir. 1993); *Buckley,* 424 U.S. at 40-41; *Wisconsin Right to Life,* 551 U.S. 449, 469 (2007). That it can legitimately reach announcements makes it overbroad. *Leonardson v. East Lansing,* 896 F.2d 190, 195 (6th Cir. 1990) (*citing Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973)); *Anderson v. Spear*, 356 F.3d 651, 658 (6th Cir. 2004); *Buckley*, 997 F.2d at 230; *Shepard*, 463 F. Supp. 2d at 889; *Bader*, 361 F. Supp. 2d at 1044; *Stout*, 440 F. Supp. 2d at 1232; *Family Trust*, 345 F. Supp. 2d at 697.

The Commission seeks to distinguish the long line of cases addressing the commits clause's constitutionality by arguing that those cases evaluated the prior version of the commits clause that is not currently before this Court. (Appellees' Br. at 30-33.) Yet the commits clause before this Court still includes the offending third-party appearance of commitment that caused the prior versions to be struck as unconstitutional. Even under *Duwe*'s analysis, which facially upheld Wisconsin's commits clause*,* Kentucky's commits clause would fail because it is not limited to an *actual* commitment to rule a certain way. *Duwe v. Alexander,* 490 F. Supp. 2d

34

968, 975 (W.D. Wis. 2007). Likewise, under *Celluci*—which despite its analysis of the prior version of the commits clause, the Commission argues is uniquely relevant here, (Appellees' Br. at 33)—Kentucky's commits clause fails because relying on appearances "makes the clause unconstitutionally vague by allowing the unpredictable opinions of third parties to determine whether a candidate has violated the clause." *Pennsylvania Family Institute v. Celluci,* 521 F. Supp. 2d 351, 380 (E.D. Pa. 2007).

Last, the Commission argues that the inclusion of "perceive as committing" and "appearance of commitment" in the canon and its commentary "meets constitutional standards and is neither overbroad nor vague" because it includes a reasonable person standard. (Appellees' Br. at 9.) However, it is the use of a third party that creates unconstitutional vagueness. No matter how purportedly "objective" that person might be, the meaning of speech cannot be left to the perceptions of a listener: "it blankets with uncertainty whatever may be said. It compels the speaker to hedge and trim." *Buckley,* 424 U.S. at 43 (1976) (*quoting Thomas v. Collins,* 323 U.S. 516, 535 (1945)).

The recent Supreme Court decision, *Caperton v. A.T. Massey Coal Co.,* 129 S.Ct 2252 (2009) has little relevance. *Caperton* articulates an objective test for actual bias to determine when recusal is required in the campaign financing

context.  *Id.* at 2263-64 ("We conclude that there is a serious risk of actual bias—based on objective and reasonable perceptions—when a person with a personal stake in a particular case has a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent.").  The Court went out of its way to stress that the *Caperton* decision was a narrow and limited one, and was not widely applicable to other circumstances. *See*, *e.g.*, *id.* at 2263 ("this is an exceptional case"); *id.* at 2265 ("On these extreme facts"); *id.* ("Our decision today addresses an extraordinary situation"); *id.* ("The facts now before us are extreme by any measure"); *id.* ("The parties point to no other instance involving judicial campaign contributions that presents a potential for bias comparable to the circumstances in this case"); *id.* at 2267 ("Application of the constitutional standard implicated in this case will thus be confined to rare instances").  Moreover, nowhere does it hold or suggest that a third party weighing the meaning of a judicial candidate's speech is likewise an adequate objective test for bias.  And such a test is not objective.

A candidate cannot objectively know when she has fallen within the scope of the commits clause because the commits clause does not objectively and meaningfully articulate its parameters.  To assert that "reasonable person" review of speech makes a speech restriction objective, as an Indiana district court recently

36

did in *Bauer v. Shepard,* 2009 WL 1941243 at *30 (N.D. Ind. June 7, 2009),

misapplies *Caperton* and is irreconcilable with prior precedent.  *See Buckley,* 424

U.S. at 40-41; *Wisconsin Right to Life,* 551 U.S. at 469.  The commits clause is

unconstitutionally vague and overbroad.

**B.    The Commits Clause Is Not Narrowly Tailored to Further a Compelling State Interest.**

The burden is on the Commission to demonstrate that the commits clause

satisfies strict scrutiny.  It has failed to do this.

First, it argues that the commits clause serve a compelling interest in

openmindedness.  Even assuming that such an interest is valid, *see supra* Part I.B.,

the Commission fails to demonstrate how this is so.  At most, it demonstrates how

a clause that prohibits pledges or promises to rule in a certain way would be

constitutional.  This is not novel analysis.  *White* holds as much.  But that is not the

rule that was adopted nor the rule before this Court.  The rule before this Court, the

commits clause, does not serve openmindedness because it is underinclusive.

The Commission disputes this, arguing that it is statements from judicial

candidates made during their campaigns that have relevance and weight with the

electorate.  (Appellees' Br. at 39-40.)  This is false.  A statement—whether a

commitment, a pledge, or an announcement—made in a moment of candor, when

an individual is not currently running for office, is of equal if not more weight to a

voter than those spoken on the campaign trail. No one reasonably expects a candidate to uphold all his promises during his campaign, whatever office he seeks. But statements made in an article, in a speech—these are bound to have more weight. The Supreme Court nomination process is a clear example of this. It is not what a candidate said during the process so much as what was said prior to the process that is relevant to the Senators voting on the matter. The commits clause does nothing to ensure openmindedness because it does not actually ensure that a judge has not pre-judged an issue. It merely ensures that during his campaign, that judge does not appear to have pre-judged an issue.

The Commission also argues that the commits clause is not overinclusive. Insomuch as a state is able to ensure openmindedness in its judges, doing so does not warrant the scope of this rule. The commits clause reaches statements not only relating to cases and controversies, but those relating to issues as well. Most tellingly, that *White* volunteered a less restrictive, constitutional alternative severely undermines the Commission's argument.

## Conclusion

The District Court properly found the solicitation clause and partisan activities clause unconstitutional under the First Amendment, but erred in upholding the constitutionality of the commits clause. Mr. Carey respectfully

requests this Court to uphold the District Court's ruling as to the solicitation clause and partisan activities clause, but reverse the District Court's ruling on the commits clause and hold that it is facially unconstitutional under the First and Fourteenth Amendments of the United States Constitution.

Dated: August 17, 2009

                                 Respectfully submitted,

                                 /s/ Anita Y. Woudenberg
                                 James Bopp, Jr., Ind. #2838-84
                                 Anita Y. Woudenberg, Ind. #25162-64
                                 Josiah Neeley, Tex. #24046514
                                 BOPP, COLESON & BOSTROM
                                 1 South Sixth Street
                                 Terre Haute, IN 47807-3510
                                 812/232-2434 telephone
                                 812/234-3685 facsimile
                                 *Counsel for Plaintiff-Appellant*

# Request for Oral Argument

Pursuant to 6 Cir. R. 34(a), Appellant respectfully requests oral argument to be heard in this matter. This cross-appeal involves important political speech issues and Appellant would like to address any questions this Court may have regarding the provisions and the constitutional framework in which this case is cast.

# Certificate of Service

I hereby certify that the foregoing Opening Brief of Plaintiff-Appellant was served electronically on August 17, 2009, upon the following counsel via the Sixth Circuit's electronic filing system:

Mr. Bopp, James, Jr.: jboppjr@aol.com

Ms. Breetz, Bethany A.: bbreetz@stites.com, tarena@stites.com, docketclerk@stites.com

Mr. Hovious, R. Gregg: ghovious@fmhd.com, trhodes@fmhd.com, awhittam@fmhd.com

Mr. Overstreet, Mark R.: moverstreet@stites.com

Ms. Woudenberg, Anita Yvonne: awoudenberg@bopplaw.com

Mr. Neeley, Josiah: jneeley@bopplaw.com


/s/Anita Y. Woudenberg
Anita Y. Woudenberg

# Certificate of Compliance

Pursuant to F.R.A.P 32(a)(7)(B) and (C), the undersigned certifies that this Opening Brief of Plaintiff-Appellant Marcus Carey complies with the page limitations:

1.  The Brief contains 9372 words.

2.  The Brief has been prepared in proportionately spaced typeface using Word in Times New Roman, 14 point font.

3.  The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type volume limits in Sixth Circuit Rule 32(a)(7), may result in the Court's striking the brief and imposing sanctions against the person signing the Brief.

/s/ Anita Y. Woudenberg
James Bopp, Jr., Ind. #2838-84
Anita Y. Woudenberg, Ind. #25162-64
Josiah Neeley, Tex. #24046514
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
*Counsel for Plaintiff-Appellant*